## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re<br>**Blue Cross Blue Shield Antitrust Litigation** | MDL Docket No. 2406 |

## RESPONSE OF BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., AND BLUE CROSS AND BLUE SHIELD OF NEBRASKA TO MOTION TO TRANSFER

Kathleen Taylor Sooy
Tracy A. Roman
Crowell and Moring LLP
1001 Pennsylvania Ave., NW
Washington, D.C.  20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com

*Attorney for Defendants Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Kansas, Inc., and Blue Cross and Blue Shield of Nebraska*

**INTRODUCTION**

The motion to transfer pursuant to 28 U.S.C. § 1407 requests transfer to the Northern District of Alabama of nine putative class action lawsuits pending in three federal district courts against the Blue Cross and Blue Shield Association ("BCBSA") and over two dozen Blue Cross Blue Shield member plans (the "Blue Plans"). A tag-along notice has been filed tagging an additional putative class action pending in a fourth federal district court. All of the putative class action lawsuits (the "Actions") are premised on allegations that BCBSA's licensing agreements, which grant the Blue Plans the exclusive right to use the Blue Cross or Blue Shield trademarks and trade names in exclusive service areas ("ESAs"), violate the antitrust laws. Plaintiffs in each of the Actions make similar allegations, assert similar causes of action and seek similar relief.

Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Kansas, Inc., and Blue Cross and Blue Shield of Nebraska ("Responding Defendants") agree that transfer and centralization of the Actions, along with any additional tag-along actions, will achieve the goals of multidistrict litigation by eliminating the potential for inconsistent rulings on pretrial motions and the burden of duplicative discovery, as well as conserving the resources of the courts, parties, witnesses and counsel. Responding Defendants also agree that the Northern District of Alabama is the best court for handling the multidistrict litigation, as seven of the nine cases listed in the motion to transfer are pending in that court.

**BACKGROUND**

Of the nine cases listed in the motion to transfer, seven are pending in the Northern District of Alabama and consolidated before Judge R. David Proctor,[1] one is pending in the Western District of North Carolina,[2] and one is pending in the Western District of Tennessee.[3] The proposed tag-along case is pending in the Middle District of Louisiana.[4]

All of the Actions allege BCBSA's licensing agreements with the Blue Plans constitute a conspiracy to violate the antitrust laws. In all of the Actions except *Conway*, plaintiffs seek to represent a class of Blue Plan subscribers, alleging that as a result of defendants' purported anticompetitive conduct, they were charged inflated health insurance premiums. In *Conway*, plaintiff seeks to represent a class of healthcare providers who provided services to Blue Plan insureds, alleging that defendants' purported anticompetitive conduct resulted in underpayment to providers for services provided to Blue Plan insureds.

In three of the Actions, plaintiffs seek certification of a nationwide class (*GC Advertising, Cerven*, and *Conway*). In the remaining Actions, plaintiffs seek certification of statewide

---

[1] *Richards v. Blue Cross & Blue Shield of Al.,* No. 2:12-cv-01133 (N.D. Ala. filed Apr. 17, 2012); *One Stop Envt'l. v. Blue Cross & Blue Shield of Al.*, No. 2:12-cv-01910 (N.D. Al. filed May 17, 2012); *Am. Elec. Motor Servs., Inc. v. Blue Cross & Blue Shield of Al.*, No. 2:12-cv-02169 (N.D. Al. filed June 14, 2012); *Bajalieh v. Blue Cross & Blue Shield of Al.*, No. 2:12-cv-02185 (N.D. Al. filed June 15, 2012); *Carder v. Blue Cross & Blue Shield of Al.*, No. 2:12-cv-02537 (N.D. Al. filed July 24, 2012); *GC Adver. LLC v. Blue Cross & Blue Shield of Al.,* No. 2:12-cv-02525 (N.D. Al. filed July 24, 2012); and *Conway v. Blue Cross & Blue Shield of Al., et al.,* No. 2:12-cv-02532 (N.D. Al. filed July 24, 2012). At this time, *Conway* is the only case in which Responding Defendants are named as defendants.

[2] *Cerven v. Blue Cross & Blue Shield of N.C.,* No. 5:12-cv-17 (W.D.N.C. filed Feb. 7, 2012).

[3] *Morrissey v. Blue Cross & Blue Shield of Tenn.*, No. 2:12-cv-02359 (W.D. Tenn. filed May 10, 2012).

[4] *Jarreau v. La. Health Serv. & Indemn. Co. (d.b.a. Blue Cross and Blue Shield of La.)*, No. 3:12-cv-00421 (Md. La. filed June 6, 2012).

classes.

All of the Actions assert claims for violation of Section 1 of the Sherman Act or a state law analog. Some of the Actions also assert claims for violation of Section 2 of the Sherman Act, claims for violation of the state antitrust laws, and state common law claims. Plaintiffs seek treble damages, and several seek injunctive relief.

All of the Actions are in the preliminary stage of litigation. No court has set a discovery schedule and no discovery has been conducted in any of the cases. Motion to dismiss briefing has been completed in *Cerven* (although plaintiffs' request for additional briefing is pending) and is underway in *Morrissey*. A motion to remand is pending in the *Jarreau* case. In the consolidated Northern District of Alabama cases, Judge Proctor has held a status conference, established separate "subscriber" and "provider" tracks, received briefing on the appointment of interim lead plaintiffs' counsel for the subscriber track and provider track cases, and proposed the appointment of a special master to assist the court in selecting interim lead counsel in the subscriber track cases. *Richards* Dkt. Nos. 44, 47, 50, 53.

## **ARGUMENT**

### I. The Panel Should Transfer the Actions to a Single District for Coordinated Pretrial Proceedings.

The Panel is authorized to transfer civil actions "involving one or more common questions of fact [that] are pending in different districts" if the transfer furthers "the convenience of the parties and witnesses" and "promotes[s] the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Actions satisfy these three statutory requirements.

#### A. The Actions Make Similar Allegations, Assert Similar Causes of Action and Seek Similar Relief.

The Actions make common factual allegations regarding the BCBSA's licensing of trademarks and trade names to the Blue Plans. The complaints in all of the Actions allege that

3

(1) the BCBSA's license agreements with the Blue Plans create Exclusive Service Areas ("ESAs") in which only the licensed Blue Plan may use the Blue Cross or Blue Shield trademarks and trade names; (2) the ESAs allow the Blue Plans to obtain market dominance; and (3) the ESAs violate Section 1 of the Sherman Act or a state law analog.  In the putative subscriber class actions, plaintiffs allege that the ESAs have result in inflated premiums.  In the *Conway* putative provider class action, plaintiff alleges that the ESAs have resulted in lower reimbursement rates for providers and decreased access to patients.

In cases where plaintiffs' allegations focus on antitrust conspiracy, the Panel has routinely held that common questions of fact exist.  *See, e.g.*, *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 930 (J.P.M.L. 1980); *In re Clark Oil & Refining Corp. Antitrust Litig.*, 364 F. Supp. 458, 459 (J.P.M.L. 1973).

### B. Transfer of the Actions Would Further Convenience and Efficiency.

In considering transfer, the Panel also evaluates whether transfer and centralization will serve judicial economy by avoiding duplication of discovery, preventing inconsistent or repetitive pretrial rulings, and conserving the resources of the parties, their counsel and the judiciary.  *See* Manual for Complex Litigation, Fourth § 22.33 (2004); *In re Baycol Prods. Liab. Litig.,* 180 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001).  These concerns are particularly applicable to putative class actions, in which it is "desirable to have a single judge oversee the class action issues . . . to avoid duplicative efforts in this area." *In re First Nat'l Bank,* 451 F. Supp. 995, 997 (J.P.M.L. 1978); *see also In re Natural Res. Fund, Inc. Secs. Litig.,* 372 F. Supp. 1403, 1404 (J.P.M.L. 1974) (stating that the "potential for conflicting class determinations by the transferor courts" is a "highly persuasive if not compelling reason for transfer of all actions to a single judge") (citation omitted); *In re Res. Exploration, Inc., Secs. Litig.,* 483 F. Supp. 817, 821 (J.P.M.L 1980) ("An

4

additional justification for transfer is the fact that most of the actions before us have been brought on behalf of similar or overlapping classes . . . . It is desirable to have a single judge oversee the class action issues . . . to avoid duplicative efforts and inconsistent rulings in this area."); *In re Allstate Ins. Co. Underwriting and Rating Practices Litig.,* 206 F. Supp. 2d 1371, 1372 (J.P.M.L. 2002) ("Centralization under Section 1407 is . . . necessary in order to eliminate duplicative discovery; prevent inconsistent pretrial rulings, particularly with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary.").

All ten of the Actions are brought as putative class actions. Plaintiffs in two of the subscriber class actions seek to represent overlapping national classes, while five of the subscriber class actions pending in the Northern District of Alabama seek to represent overlapping statewide classes. If the Actions are transferred and coordinated for pretrial proceedings, resolution of issues regarding defendants' alleged anticompetitive conduct will be consistent, and duplicative efforts by the courts, parties, and counsel will be avoided.

Further, centralization and transfer will yield significant time and cost savings to all parties by protecting the witnesses involved in the Actions from multiple depositions and facilitating a coordinated approach to discovery.

Finally, each of the Actions is in the preliminary phase of litigation. No court has entered an order setting a discovery schedule. Therefore, transfer and coordination will achieve the goal of judicial economy without disrupting ongoing litigation.

## II.     The Actions Should be Transferred to the Northern District of Alabama.

In choosing a transferee court, the Panel considers a range of factors, including the geographically central or most convenient location; where putative class members, witnesses and defendants are located; whether the district has the resources likely required by the docket; and the experience of the judge who will likely be assigned to the case. *See, e.g., In re Cintas*

*Corp. Overtime Pay Arbitration Litig.*, 444 F. Supp. 2d 1353, 1355 (J.P.M.L. 2006). These factors, taken as a whole, indicate that the Northern District of Alabama would be the best forum for transfer.

The Northern District of Alabama is a convenient forum for all parties. Seven of the ten Actions are already pending in the Northern District of Alabama, a factor which weighs in favor of selecting it as the transferee court. *See, e.g., In re Wells Fargo Wage & Hour Emp. Practices Litig. (No. III)*, 804 F. Supp. 2d 1382, 1384-85 (J.P.M.L. 2011); *In re Se. Milk Antitrust Litig.*, 530 F. Supp. 2d 1359, 1360 (J.P.M.L. 2008). The remaining three Actions are also pending in the southeastern region of the United States (North Carolina, Tennessee and Louisiana). All of the named plaintiffs in the Actions reside in the southeast, and thus many of the witnesses and much of the evidence are also located there. Likewise, many of plaintiffs' counsel are located in the southeastern region of the country.[5]

In addition, the Northern District of Alabama has the resources to handle complex litigation, and has successfully managed multidistrict litigations involving complex technical issues. *See, e.g., In re Silicone Gel Breast Implants Prods. Liability Litig.*, 793 F. Supp. 1098, 1101 (J.P.M.L. 1992)*; In re Chantix (Varenicline) Prods. Liab. Litig.*, 655 F. Supp. 2d 1346, 1347 (J.P.M.L. 2009). The Northern District of Alabama is not overburdened with multidistrict litigation; there is currently only one pending multidistrict proceeding in that court. *See* U.S. Judicial Panel on Multidistrict Litigation, Docket Information, available at

---

[5] Birmingham-Shuttlesworth International Airport is served by several major carriers and sees almost 3 million passengers per year. *See* Birmingham-Shuttlesworth International Airport, Statistical Reports, http://www.flybirmingham.com/aboutbhm-reports.shtml; *see also In re Gator Corp. Software Trademark & Copyright Litig.,* 259 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003) (noting importance of accessible location).

http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets-By-District-September-2012.pdf.

Finally, Judge Proctor has experience in efficiently and successfully handling multidistrict litigation, having overseen *In re Total Body Formula Prods. Liab. Litig.* 582 F. Supp. 2d 1381, 1382 (J.P.M.L. 2008). Judge Proctor also has successfully handled other complex litigation, including antitrust cases and class actions. *See, e.g.*, *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 822 F. Supp. 2d 1201 (N.D. Ala. 2011) (antitrust); *Winston v. Jefferson Cnty., Ala.*, No. 2:05-cv-0497 (N.D. Ala. June 26, 2006) (class certification).

## CONCLUSION

For the foregoing reasons, Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Kansas, Inc., and Blue Cross and Blue Shield of Nebraska respectfully request that the Panel enter an order transferring the Actions, as well as any subsequent tag-along actions, to the United States District Court for the Northern District of Alabama for centralization and coordinated pretrial proceedings.

Dated: October 1, 2012

s/ Kathleen Taylor Sooy
Kathleen Taylor Sooy
Tracy A. Roman
Crowell and Moring LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
troman@crowell.com

*Attorney for Defendants Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Kansas, Inc., and Blue Cross and Blue Shield of Nebraska*

BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re:<br><br>Blue Cross Blue Shield Antitrust Litigation | MDL No. 2406 |

## PROOF OF SERVICE

I hereby certify that on October 1, 2012, a true and correct copy of the foregoing Response of Blue Cross and Blue Shield of Kansas City, Blue Cross and Blue Shield of Kansas, Inc., and Blue Cross and Blue Shield of Nebraska to Motion to Transfer was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Additionally, the entities listed below are not registered for ECF and will be served via First Class Mail:

| | |
|---|---|
| Blue Cross of Northeastern Pennsylvania<br>70 North Main Street<br>Wilkes-Barre, PA  18711 | Blue Cross and Blue Shield of Rhode Island<br>500 Exchange Street<br>Providence, RI  02903 |
| Highmark Blue Cross Blue Shield West Virginia<br>P.O. Box 7026<br>Wheeling, WV  26003 | Blue Cross and Blue Shield of Vermont<br>P.O. Box 186<br>Montpelier, VT  05601 |

8

| | |
|---|---|
| Highmark Inc.<br><br>Fifth Avenue Place<br><br>120 Fifth Avenue<br><br>Pittsburg, PA  15222-3099 | |

                                                /s/ Kathleen Taylor Sooy
Kathleen Taylor Sooy
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 624-2500
ksooy@crowell.com