**BEFORE THE JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

_____
                                                      )
**IN RE: BLUE CROSS**                 )
**BLUE SHIELD ANTITRUST**        )                    **MDL No. 2406**
**LITIGATION**                             )
_____ )


**FRED R. RICHARDS, RICHARDS AND SONS CONSTRUCTION, CO.,**
**THOMAS A. CARDER, JR., INDUSTRIAL SALES & SERVICE, LLC, AND**
**AMERICAN ELECTRIC MOTOR SERVICES, INC.'S BRIEF IN**
**OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS**


**I.     INTRODUCTION**

Plaintiffs GC Advertising, LLC and CB Roofing, LLC, (hereinafter "GC Advertising") through counsel, have moved to transfer *Cerven v. Blue Cross Blue Shield of North Carolina*, No. 5:12-cv-17 (W.D.N.C.) and *Morrissey v. Blue Cross Blue Shield of Tennessee, Inc.*, No. 2:12-cv-02359-JTF-CDC (W.D. Tenn.), to the United States District Court for the Northern District of Alabama, and to centralize them with the consolidated action *Richards v. Blue Cross Blue Shield of Alabama,* No. 2:12-cv-01133-RDP (N.D. Ala.),[1] on the false premise that these cases all involve the "same facts and core legal issue." Memorandum of Law in Support of GC Advertising, LLC and CB Roofing, LLC's Motion For Transfer of Actions to the Northern District of Alabama Pursuant to 28 U.S.C. 1407 For Coordinated or Consolidated Pretrial Proceedings (hereinafter Transfer Memorandum).  In reality, centralization of these actions before the Judicial Panel on Multidistrict Litigation ("the Panel") will not "promote the just and

---

[1]   A notice of related action for the case *Jarreau v. Louisiana Health Service & Indemnity Co.*, No. 3:12-cv-00421 (M.D. La.) was also filed by the defendant in that case.

efficient conduct" of the litigation, nor will it advance the "convenience of the parties and witnesses." 28 U.S.C. 1407(a); *In re Dow Chemical Co. "Polystyrene Foam" Prods. Liab. Litig.*, 429 F. Supp. 1035, 1036 (J.P.M.L. 1977) (denying transfer when it would "not necessarily serve the overall convenience of the parties and witnesses or promote the just and efficient conduct of this litigation."). Moreover, GC Advertising has not met the high burden of showing that the actions are so complex, or the accompanying discovery so time-consuming, as to overcome the inconvenience to the litigants and their witnesses of having actions transferred to an out-of-state forum. *In re Brandywine Associates Antitrust & Mortg. Foreclosure Litig.*, 407 F. Supp. 236 (J.P.M.L. 1976).

Beyond its failure to justify forcing the large majority of parties to litigate in an out-of-state forum, there are compelling reasons for denying GC Advertising's motion. The cases that GC Advertising is attempting to centralize are at different stages of litigation, involve different classes of plaintiffs and different defendants, and the challenged conduct in each involves a distinct antitrust market and a distinct impact on the participants in that market. In addition, the small number of actions involved, coupled with the ability to avoid duplicative discovery through cooperative efforts of the parties, both suggest that transfer is unnecessary. *In re USS Trenton Disaster Litig.,* 383 F. Supp. 1406 (J.P.M.L. 1974) (finding that the small number of actions, lack of support of the majority of parties for the transfer, and the ability of discovery coordination even without the centralization of the cases before the Panel, compelled the conclusion that the transfer motion should be denied).

II.     **ARGUMENT**

      A.     **The Reasons for Centralization and Transfer Outlined in the Brief of Plaintiff GC Advertising are Unavailing**

          1.     **The Cases Will Not Hinge on Common Questions of Fact**

Contrary to GC Advertising's assertions, the cases it seeks to transfer will not hinge on common questions of fact. The only question of fact that is common to all the cases is a fact completely undisputed by the parties to the litigation: that Blue Cross and Blue Shield Association ("BCBSA") and its members—the 38 Blue Cross insurance companies—have agreed to assign exclusive territories to each of the 38 Blue Cross insurers. The fact that BCBSA and its licensees engage in this practice is well-publicized and admitted by BCBSA. Accordingly, centralizing the cases pending in various jurisdictions will not yield any efficiencies regarding this sole, undisputed, common fact. *See In re Skinnygirl Margarita Bev. Mktg. & Sales Practices Litig.,* 829 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (denying centralization in part because "the central allegation that Skinnygirl Margarita beverage was marketed as being all natural despite some level of sodium benzoate appears to be undisputed" and thus the movant had failed to show how centralization would benefit the proceedings).

Neither are there issues with potentially conflicting decisions of law that merit centralization. As an initial matter, there is nothing wrong with different courts reaching different decisions on a novel legal issue, as long as they do not create conflicting legal obligations for the defendant. Our law develops through a multi-district and multi-circuit federal judiciary, with conflicting opinions being resolved ultimately by the United States Supreme Court. Moreover, there is no chance that, even without centralization, BCBSA or its member companies will not be able to comply with differing rulings. BCBSA and

3

its members can always stop engaging in the challenged practices in any state where the court finds them illegal and, by doing so, avoid future liability. Courts have made clear, in the federal preemption context, that being subject to conflicting legal rulings is only a reason to interfere with the normal development of law where it will be literally impossible for a defendant to comply with the differing rulings, which is not the case here. *Baylake Bank v. TCGC, LLC*, No. 08-cv-608, 2008 U.S. Dist. LEXIS 77291, at *24 (E.D. Wis. Sept. 30, 2008) (noting that federal preemption analysis concludes there is no conflict as long as "it is possible to comply with both state and federal law").

Finally, any concerns about a nationwide injunction issuing from one court are unmerited. While district courts have the authority to issue injunctions beyond their territorial jurisdiction, principles of comity limit this practice in cases where other circuits are considering or have decided the same issue. *See United States v. AMC Entm't, Inc.,* 549 F.3d 760, 770 (9th Cir. 2008) ("[W]hen exercising its equitable powers to issue an injunction, a court must be mindful of any effect its decision might have outside its jurisdiction.").

What centralization and transfer will do, however, is bring together cases that have important and disputed factual differences—such as the nature and degree of competition among health insurers in the particular state, the presence or absence of potential competitors in each state, and the impact of the market allocation on insureds in each jurisdiction. GC Advertising itself points out this distinction, noting that "the escalating costs of health insurance over the past several years have affected some communities in the country more than others." Transfer Memorandum at p.14. It is

exactly these differences in the factual circumstances of each of the jurisdictions that make centralization inappropriate.

        **2.**        **Transfer Would Not Promote the Just and Efficient Conduct of the Litigation Nor Would it Increase the Convenience to the Parties.**

One of the main reasons to centralize actions is to increase the efficient resolution of the litigation. While that is no doubt a worthwhile goal, it would not be served by centralization in the present circumstance. As is already clear from the briefs for the pending motions to dismiss in North Carolina and Tennessee,[2] state-specific insurance regulation will be crucial to determining the viability and eventual outcome of each of these cases. Having a single court wade through the complex and likely unfamiliar intricacies of insurance regulation for each of these states is not efficient. Instead, such state-specific issues are best resolved by the courts of each individual state. *See infra*, Sec. II.B.5.

Further, any efficiencies in discovery that would be achieved by a transfer can be achieved just as well through coordination and cooperation of the parties, without the attendant problems that centralization would cause. *In re Raymond Lee Org. Inc. Sec. Litig.*, 446 F. Supp. 1266, 1268 (J.P.M.L. 1978) ("[C]ommunication and cooperation between the . . . courts, if deemed appropriate by those courts, along with the cooperation of the parties, would minimize the possibility of conflicting pretrial rulings."). In the absence of a compelling reason to centralize the cases, and with the real possibility of

---

[2] The Transfer Memorandum incorrectly posits that the cases pending before the Northern District of Alabama are "as far advanced, or more advanced, than either of the cases pending in the Western District of Tennessee or in the Western District of North Carolina." This point is clearly undercut by the fact that there are pending motions to dismiss in both of those cases, while in the Alabama litigation, the parties will not even begin briefing any potential motion to dismiss until *after* leadership is decided and a consolidated amended complaint is filed.

cooperation outside of formal centralization, transfer and centralization are not warranted. *See In re Best Buy Co., Inc., Song-Beverly Credit Card Act Litig., et al*., 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011) ("[C]entralization under Section 1407 should be the last solution after considered review of all other options"). Additionally, there are not so many actions that such cooperation would be unwieldy or impossible. *See In re Michaels Stores, Inc.*, 844 F. Supp. 2d 1368 (J.P.M.L. 2012) (finding that seven actions in two districts should not be centralized). In the *Canadian Autos* cases, which involved numerous related actions in federal court and in several different state courts, the federal and state courts were able to achieve significant efficiencies across the cases by issuing coordinated discovery orders, even though the state cases could not be centralized with the federal cases. *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 03-md-1532 (D. Me.). So too here, the district courts involved can coordinate discovery efficiently without centralization and its attendant difficulties.

Finally, while the Transfer Memorandum makes much of the alleged increase in convenience that transfer and centralization would effectuate, this increase in convenience is illusory for two reasons. One, as noted, efficiencies can also be achieved through coordination without centralization. And two, individual issues and the need for jurisdiction-specific discovery ensure that even were the cases centralized, modest time or expense would be saved. Certainly for the Plaintiffs and counsel in cases outside Alabama, having to continually travel to the Northern District of Alabama would not be convenient.[3]

---

[3] The fact that some of the parties to these cases support centralization does not imply that centralization would be efficient; rather, these parties may have other reasons to prefer centralization that are unrelated to efficiency.

**B.     Centralization and Transfer Are Inappropriate in this Case**

Not only are the reasons presented by GC Advertising for transfer not compelling, there are several, independent reasons why transfer is not appropriate in this case.

**1.     The Antitrust Impact in Each of the North Carolina, Tennessee, Louisiana, and Alabama Actions Will Be Unique**

Perhaps the most compelling reason that these actions should not be centralized is the fact that proving antitrust injury in each case will be heavily dependant on the market conditions in the state in which that case was brought.  Courts have repeatedly held that showing antitrust impact, a necessary element in an antitrust case, requires an analysis of the specific market at issue. *See Heerwagen v. Clear Channel Cmmc'ns,* 435 F.3d 219, 229 (2d Cir. 2006) (finding that in order to prove a monopolization claim, a plaintiff must "establish the relevant market because the power to control prices or exclude competition only makes sense with reference to a particular market"). This is necessarily a fact-specific inquiry that encapsulates not only the prices for health insurance in the particular state market, but also the competitive landscape, including such considerations as market shares and the presence or absence of potential competitors.  Even if these cases are transferred to a single court, that court will have to evaluate impact in each state market separately.

**2.     The North Carolina, Tennessee, Louisiana and Alabama Actions are at Distinct Phases of the Litigation**

Transfer of these cases is further inappropriate because the cases are at different stages of litigation.  Courts have often taken into account the stages of the litigation in the various actions when determining whether or not to transfer and centralize all the actions. *See In re Harmony Loan Co., Sec. Litig.*, 372 F. Supp. 1406, 1406-07 (J.P.M.L. 1974)

(finding transfer by MDL Panel would not promote the efficient conduct of the litigation because, among other reasons, the various cases were at different stages of development). Here, in the underlying litigations in one of the four states at issue, the litigants have fully briefed motions to dismiss and are awaiting a ruling from the court. *See* Motions to Dismiss, *Cerven*, No. 12-cv-17, Dkt. Nos. 57 and 59 (W.D.N.C. Apr. 30, 2012).   In a second state, a motion to dismiss has been filed and is awaiting a response. Motions to Dismiss, *Morrissey*, No. 12-cv-2359, Dkt. Nos. 33 and 35 (W.D. Tenn. Aug. 20, 2012). In the *Richards* action, the plaintiffs are awaiting a ruling from the court on their competing petitions to appoint Interim Lead Counsel and Interim Liaison Counsel, and thus have not yet filed a consolidated amended complaint. *See* Order, *Richards,* No. 12-cv-1133, Dkt. No. 50 (N.D. Ala. July 27, 2012).   Finally, in the *Jarreau* case in Louisiana, the parties are awaiting a ruling on BCBSA's motion to intervene in the litigation. *See* Motion to Intervene, *Jarreau,* No. 12-cv-421, Dkt. No. 7 (M.D. La. July 13, 2012). The fact that all four of the actions are at different stages counsels against combining them. Further, it is especially inefficient to combine cases in which there are pending dispositive motions in one out of the four cases—especially where that motion raises state-specific legal issues—as the outcome of that motion will greatly affect the future of those cases. *Cf. In re U.S. Navy Variable Reenlistment Bonus Litig.,* 407 F. Supp. 1405 (J.P.M.L. 1976) (centralization denied where pending appeals could have substantial and possibly dispositive effect on some of the actions to be centralized).

### 3.        The Actions Seek to Represent Different Classes of Plaintiffs

The various actions are also brought on behalf of very different classes of plaintiffs. While some of the named plaintiffs seek to represent only those individuals

who purchased health insurance from a particular Blue Cross Blue Shield entity (i.e., *Richards, Morrissey*), others seek to represent health care providers (*Conway*), and still others seek injunctions on behalf of a nationwide class of individuals who purchased insurance from *any* Blue Cross Blue Shield entity (*Cerven, GC Advertising*). Further, the class definitions vary in temporal scope. Some of the class definitions cover periods starting as recent as June 6, 2012 (*Jarreau*), while others stretch as far back as February 7, 2008 (*Cerven*).[4]

The Panel has been reticent in the past to centralize cases in which the various actions sought to protect different interests or requested different relief, as is the case here. *See In re Insulin Mfg. Antitrust Litig.,* 487 F. Supp. 1359, 1361 (J.P.M.L. 1980) (denying centralization of three antitrust actions, among other reasons, "because of the different positions of the various plaintiffs in the . . .  industry"); *In re Harmony Loan Co.,* 372 F. Supp. at 1406-07 (denying transfer in part because class of plaintiffs in one action had  "several issues not common" to class of plaintiffs in another action and the cases sought "to protect markedly different interests" and "request[ed] different relief"). The difference in plaintiff classes makes these actions inappropriate for centralization before the Panel, as the difference in plaintiffs will necessarily create divergent issues of both fact and law.

### 4. The North Carolina, Tennessee, Louisiana, and Alabama Actions Are Against Different Defendants

Not only are there major differences in the plaintiff classes between the different actions, the actions also name different defendants. For instance, the *Conway* case lists

---

[4] Although the expected consolidated complaint in the Alabama consumer cases will resolve any issues with differing class periods there, the differences in the temporal scope of the classes in the other states are a serious reason to deny centralization.

BCBSA and all of its members as defendants, while others list only the state Blue Cross entity (*Morrissey, Jarreau*), or only one state Blue Cross entity and the BCBSA (*Cerven, Richards*).  In fact, even within Alabama, the differences between the *Conway* case and the other cases have led the Court to place the cases on two different "tracks."  *See Richards v. Blue Cross Blue Shield of Alabama*, Master File No. 2:12-CV-01133-RDP (N.D. Ala. August 7, 2012) (establishing separate tracks for provider and subscriber cases).  The Panel has also considered lack of overlap in defendants as a reason to deny transfer. *See In re Auction Rate Sec. Mktg. Litig.,* 581 F. Supp. 2d 1371 (J.P.M.L. 2008) (finding that centralization was not appropriate where no single action was against more than one defendant entity).

### 5.   Each Action Will Have More Connection to the State in Which It Was Filed

Finally, centralization is not appropriate here because each action has a unique connection to the state in which it was filed. For instance, as has already become clear in the pending motions to dismiss in the North Carolina and Tennessee actions, the particularities of state insurance laws will have an enormous impact on the viability and outcome of each of these cases. *See* Motions to Dismiss, *Cerven*, No. 12-cv-17, Dkt. Nos. 57 and 59 (W.D.N.C. Apr. 30, 2012); Motions to Dismiss, *Morrissey*, No. 12-cv-2359, Dkt. Nos. 33 and 35 (W.D. Tenn. Aug. 20, 2012). The Panel has recognized, in cases as recent as four years ago, that state law variances such as these make centralization inappropriate. *See In re Title Ins. Real Estate Settlement Procedures Act & Antitrust Litig.*, 560 F. Supp. 2d 1374, 1376 (J.P.M.L. 2008) (finding that centralization would not "serve the convenience of the parties and witnesses or further the just and efficient

conduct of this litigation" because, "[t]hese actions, involving antitrust claims pertaining to the title insurance industry, encompass different regulatory regimes in the states in which actions are pending along with variances in insurance regulation and law in each state").

Alabama's approach to the regulation of insurance varies considerably from state regulation in states such as North Carolina and Tennessee. These differences are crucial because the application of the filed-rate doctrine turns on the extent to which and method by which the state at issue regulates the rates that are the subject of the lawsuit. *See, e.g.*, *In re Pa. Title Ins. Antitrust Litig*., 648 F. Supp. 2d 663, 674 (E.D. Pa. 2009) (holding that whether the filed-rate doctrine bars a claim turns on the authority provided to state agencies under the state statutory scheme). Moreover, because the filed-rate doctrine stems from federal common law, it has been recognized that the reviewing court should "fill in the interstices of the doctrine by drawing on state law." *Id.* at 673. Thus, the differences in state insurance law and state doctrinal law will have a significant impact on the analysis of the filed-rate doctrine, and the viability of the cases at issue here.

## III.    CONCLUSION

For the reasons discussed herein, Plaintiffs Fred R. Richards and Richards and Sons Construction Co., along with the plaintiffs whose attorneys are listed below, respectfully request that the Panel deny the pending motion to transfer and centralize the cases to the Northern District of Alabama.

Dated: October 1, 2012

John D. Saxon
JOHN D. SAXON P.C.
2119 3rd Avenue North
Birmingham, AL 35203
Tel: (205) 324-0223
Fax: (205) 323-1583
jsaxon@saxonattorneys.com

*Proposed Interim Liaison Counsel*

Charles M. Thompson
CHARLES M. THOMPSON, ESQ.
1401 Doug Baker Blvd., Ste. 107-121
Birmingham, AL 35242
Tel: (205) 677-0376
Fax: (205) 995-0078
CMTLAW@aol.com

*Attorney for Plaintiff Fred R. Richards
and Richards and Sons Construction
Co.*

Daniel E. Gustafson
Daniel C. Hedlund
Ellen M. Ahrens
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
eahrens@gustafsongluek.com

Respectfully submitted,

/s/ *Daniel A. Small*
Daniel A. Small
Kit A. Pierson
Richard A. Koffman
Laura Alexander
Meghan M. Boone
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Avenue, NW,
Suite 500 West
Washington, DC 20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699
dsmall@cohenmilstein.com
kpierson@cohenmilstein.com
rkoffman@cohenmilstein.com
lalexander@cohenmilstein.com
mboone@cohenmilstein.com

*Proposed Interim Class Counsel*

Eric L. Cramer
Ellen Noteware
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: 215.875.3009
ecramer@bm.net
enoteware@bm.net

Joshua P. Davis
2130 Fulton Street
San Francisco, CA 94117
Tel: (415) 422-6223
davisj@usfca.edu

Dianne M. Nast
RODANAST, P.C.
801 Estelle Drive
Lancaster, PA 17601
Tel: (717) 892-3000
Fax: (717) 892-1200
dnast@rodanast.com

*Attorneys for Plaintiff American*
*Electric Motor Services, Inc.*

Kendall S. Zylstra
Richard D. Schwartz
FARUQI & FARUQI, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046

Michael J. Brickman
Kimberly Keevers Palmer
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
174 East Bay Street, P.O. Box 879
Charleston, SC 29401
(843) 727-6500
mbrickman@rpwb.com
kkeevers@rpwb.com

Joe Goldberg
Vincent J. Ward
FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD, P.A.
20 First Plaza NW, Suite 700
Albuquerque, New Mexico 87102
Tel: (505) 842-9960
jg@fbdlaw.com
vjw@fbdlaw.com

*Attorneys for Plaintiffs Thomas A. Carder,*
*Jr. and Industrial Sales & Service, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

   I hereby certify that on October 1, 2012, I caused a true and correct copy of the foregoing **FRED R. RICHARDS, RICHARDS AND SONS CONSTRUCTION, CO., THOMAS A. CARDER, JR., INDUSTRIAL SALES & SERVICE, LLC, AND AMERICAN ELECTRIC MOTOR SERVICES, INC.'s BRIEF IN OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS** to be served on all counsel of record via the CM/ECF system, as well as the following individuals via email.

Dated: October 1, 2012
         */s/ Daniel A. Small*
         Daniel A. Small
         Cohen Milstein Sellers & Toll PLLC
         1100 New York Ave, NW
         Suite 500 West
         Washington, DC 20005
         Tel: 202-408-4600
         Fax: 202-408-4699
         *Attorney for Plaintiffs Fred R. Richards and*
         *Richards and Sons Construction Co., Inc*

| | |
|---|---|
| Adam W. Pittman<br>apittman@saxonattorneys.com | Gary M. London<br>glondon@burr.com |
| Alan D. Rutenberg<br>arutenberg@foley.com | Gregory L. Davis<br>gldavis@knology.net |
| Andrew W. Martin, Jr.<br>awm@ajlaw.com | Gwendolyn C. Payton<br>paytong@lanepowell.com |
| Arthur Nash Bailey, Jr.<br>abailey@hausfeldllp.com | H. James Koch<br>hjk@ajlaw.com |
| Brian K. Norman<br>bkn@snlegal.com | Ian R. Conner<br>Ian.conner@kirkland.com |
| Brian P. Kappel<br>bkappel@lightfootlaw.com | J. Bentley Owens, III<br>jbo@starneslaw.com |
| Carl Burkhalter<br>cburkhalter@maynardcooper.com | J. Robert Robertson<br>robby.robertson@hoganlovells.com |
| Cavender C. Kimble<br>ckimble@balch.com | Joe R. Whatley, Jr.<br>jwhatley@whatleykallas.com,<br>ecf@wdklaw.com |

Charles M. Thompson
CMTLAW@aol.com

Charles R. Watkins
charlesw@dglawfirm.com

Cheri D. Green
cgreen@brunini.com

Christopher A. Shapley
cshapley@brunini.com

Christopher T. Hellums
PDH-efiling@pittmandutton.com

Craig A. Hoover
craig.hoover@hoganlovells.com,
miranda.berge@hoganlovells.com

D. Keith Andress
kandress@bakerdonelson.com

Daniel A. Small
dsmall@cohenmilstein.com

Daniel C. Hedlund
dhedlund@gustafsongluek.com

Daniel E. Gustafson
dgustafson@gustafsongluek.com

Daniel E. Laytin
Daniel.laytin@kirkland.com

David J. Guin
davidg@dglawfirm.com

Dennis G. Pantazis, Jr.
dpantazisjr@wcqp.com, dgp@wcqp.com

Devin Clark Dolive
ddolive@burr.com

Dianne M. Nast
dnast@rodanast.com

John D. Saxon
jsaxon@saxonattorneys.com

John M. Johnson
jjohnson@lightfootlaw.com

John R. Wylie
Johnw@dglawfirm.com,
Tressyw@dglawfirm.com

Jonathan S. Mann
PDH-efiling@pittmandutton.com

Kathleen Taylor Sooy
ksooy@crowell.com

Kevin R. Garrison
krgarrison@bakerdonelson.com

Kimberly R. West
kwest@wallacejordan.com

Laura Alexander
lalexander@cohenmilstein.com

Mark M. Hogewood
mhogewood@wallacejordan.com

Meghan M. Boone
mboone@cohenmilstein.com

Michael A. Naranjo
mnaranjo@foley.com

Michael D. Hausfeld
mhausfeld@hausfeldllp.com

Michael E. Gurley, Jr.
mgurleyjr@yahoo.com

N. Thomas Connally, III
tom.connally@hoganlovells.com

Nicholas B. Roth
nbroth@eysterkey.com

E. Desmond Hogan
desmond.hogan@hoganlovells.com

E. Kirk Wood, Jr.
ekirkwood1@bellsouth.net,
bakercarla@bellsouth.net

Edgar D. Gankendorff
egankendorff@provostylaw.com

Edith M. Kallas
ekallas@whatleykallas.com

Edward S. Bloomberg
ebloomberg@phillipslytle.com,
dwallum@phillipslytle.com

Ellen M. Ahrens
eahrens@gustafsongluek.com

Emily M. Yinger
emily.yinger@hoganlovells.com,
albert.hagovsky@hoganlovells.com

Eric R. Belin
ebelin@provostylaw.com

Erin C. Burns
eburns@rodanast.com

Erin M. Wilson
wilsonem@lanepowell.com

Pamela B. Slate
pslate@hillhillcarter.com

Pedro Santiago-Rivera
santiagopedro@reichardescalera.com

R. David Kaufman
dkaufman@brunini.com

Rafael Escalera-Rodriguez
escalera@reichardescalera.com,
santiagop@reichardescalera.com

Scott F. Singley
Ssingley@brunini.com

Star Mishkel Tyner
start@dglawfirm.com

Tammy McClendon Stokes
tstokes@dglawfirm.com

Tracy A. Roman
troman@crowell.com

W. Tucker Brown
tbrown@whatleykallas.com,
ecf@wdklaw.com

William A. Isaacson
wisaacson@bsfllp.com, llaing@bsfllp.com